890 P.2d 395 (1994)
119 N.M. 334
Robert G. BOGAN, Bennie Lovato, Richard Rivera, and Ramon Baldonado, Petitioners-Appellees/Cross-Appellants,
v.
SANDOVAL COUNTY PLANNING AND ZONING COMMISSION, Dan Delgado, Toni Popper, Robin Reiger, Don Doench, Willie Escarcida, and Jenny Sandoval, in their official capacity as members of the Sandoval County Planning and Zoning Commission, the Board of County Commissioners of Sandoval County, Edmund *396 J. Lang, Patricia Thomas, Ubaldo Lovato, Thomas Swisstack, and Patrick Baca, in their official capacity as members of the Board of County Commissioners of Sandoval County, Respondents-Appellees, and
National Advertising Company, a Delaware corporation, New Mexico State Highway and Transportation Department, Alfred L. Baca, Andre Baca, and Margaret A. Cassidy-Baca, Respondents-Appellants/Cross-Appellees.
No. 14985.
Court of Appeals of New Mexico.
December 1, 1994.
Certiorari Denied February 2, 1995.
*398 Luis G. Stelzner and Philip P. Larragoite, Sheehan, Sheehan & Stelzner, P.A., Albuquerque, for petitioner-appellees/cross-appellants.
W. Daniel Schneider, Schneider & Schneider, Albuquerque, for respondents-appellants/cross-appellees Nat. Advertising Co. and Bacas.
Peter Cubra and Duff H. Westbrook, Duff H. Westbrook, P.C., Albuquerque, for respondents-appellants/cross-appellees Sandoval County.

*399 OPINION

MINZNER, Chief Judge.
All parties have appealed from a district court judgment that reversed in part and affirmed in part a decision by the Sandoval County Planning and Zoning Commission (PZC). The PZC decision authorized the placement of large, illuminated billboards on land owned by Andre Baca and Margaret A. Cassidy-Baca (the Bacas) on both sides of I-25 near Algodones. On petition by Robert G. Bogan, Bennie Lovato, Richard Rivera, and Ramon Baldonado (Petitioners), all of whom also own land near Algodones, the district court dismissed the claims of all Petitioners other than Bogan, ordered the billboards on the west side of the freeway removed, allowed those on the east side to remain, and awarded Bogan one-quarter of the attorney's fees Petitioners requested.
Respondents National Advertising Co. (National) and the Bacas raise the following issues on appeal: (1) lack of subject matter jurisdiction in the district court; (2) failure to exhaust administrative remedies; (3) lack of standing; (4) laches; (5) error in failing to remand issues for determination by the zoning authority; (6) error in determining that the billboards were not a permissive use under the ordinance; and (7) error in holding that the zoning ordinance was valid. In their cross-appeal, Bogan and the other Petitioners raise the following issues: (1) abuse of discretion in not awarding all the requested attorney's fees; (2) error in finding that Petitioners Lovato, Rivera, and Baldonado received adequate notice of the PZC decision; (3) error in dismissing any of the parties and finding that the billboards east of I-25 need not be removed after having determined that the County acted ultra vires; (4) error in allowing the billboards east of I-25 to remain after having found that all of the petitioners had standing; and (5) error in not determining that PZC decisions must be filed with the county clerk.
We affirm on each issue other than the first issue raised on cross-appeal, on which we conditionally affirm.

I

Background
On January 18, 1991, National Advertising Company (National) entered into a lease with the Bacas that allowed National to place "six off premise signs" along I-25 on the Bacas' property in Sandoval County. The billboards were to be situated in Algodones with four of the billboards west of I-25 and two east of I-25.
The RD District is one of six zoning districts designated in the "Ordinance Establishing Comprehensive Zoning Regulations and Zoning Maps for Sandoval County, New Mexico" (ordinance). The property at the billboard sites is zoned "RD-Rural Development District." The two types of use allowed in the RD district are permissive and conditional. There are three categories of permissive use: singular dwelling units; business, service, and commercial establishments; and accessory uses and structures. There are three categories of restricted conditional use: multiple dwelling units; limited industrial activities; and salvage yards. The ordinance states that "[a]ny use not designated as permissive or conditional within a particular zone district is prohibited from that zone district."
National applied to the PZC requesting permits for the billboards as a permissive use under the ordinance. In response, the County Attorney took the position that such use was not permissive, and on May 2, 1991, National applied for a variance. Immediately prior to the scheduled hearing concerning National's application, the county planning department suggested that the request be changed from a variance to conditional use. National later amended their request to reflect that change.
Section 24(B) of the ordinance provides as follows:
B. Application. Any request for an amendment to this Ordinance shall be submitted with filing fee to the Zoning Officer on a prescribed application form obtainable from the Zoning Officer. The Zoning Officer shall transmit the application and any supplementary information to the Zoning *400 Commission for review and consideration at their next regularly scheduled meeting. The Zoning Commission shall prepare and transmit a recommendation in writing, to the County Board within 7 days after their review of the proposed amendment is completed. To the extent possible, all abutting property owners of any land proposed for a zone change shall be notified of the Zoning Commission meeting at which a zone change will be reviewed for recommendation to the County Board.
The parties stipulated at trial that Petitioners Lovato, Rivera, and Baldonado are landowners with property abutting the Baca parcel on the west side of I-25 on which four billboards were constructed. None of the Petitioners own land abutting the east parcel on which billboards are located. Whether Bogan is an owner of land abutting the west parcel within the meaning of the ordinance depends on an unrecorded deed.
On November 7, 1989, Defendant Andre Baca had executed a quit-claim deed in favor of Alfred Baca conveying all of Andre's interest in a six-acre parcel that is situated between Bogan's property and the west parcel on which four of the billboards are located. However, the deed was never recorded, and the county tax assessor's map in effect in the spring of 1991 did not indicate that Alfred Baca had acquired the six-acre parcel.
On May 15, 1991, Roy E. Slezak (Slezak), the planning and zoning administrator, sent certified letters to Petitioners Lovato, Rivera, and Baldonado notifying them that the PZC would hold a hearing regarding a request for a variance by National. He did not notify Bogan. The record indicates that the County intended that the hearing be public, and thus that it occurred at a regularly-scheduled PZC meeting. National's May 2 application bears a legend that "[t]his item is scheduled to be heard at a meeting of the Sandoval County Planning & Zoning Commission on 6-12-91 time 7:00 P.M." At the bottom of National's application there is a typewritten note: "A copy of the notice of public hearing should be filed with each application." On June 12, 1991, the PZC considered and granted the amended application for conditional use for the six billboards which National began to erect in April 1992.
Petitioners Lovato, Rivera, and Baldonado neither attended the hearing nor made any inquiry regarding the letters they had received. The decision granting the permit was filed with Slezak, as was the policy and practice of Sandoval County.
The ordinance requires that all appeals of zoning decisions to the Board as zoning authority be made within thirty days of the decision by filling out prescribed forms and tendering a specified fee. No Petitioner appealed within thirty days of the date the PZC decision was filed with Slezak.
Petitioners became aware of the construction of the six billboards on or about April 15, 1992. On May 6, 1992, Bogan sent a letter to the Board informing them that he had not received written notice of the June 12, 1991 hearing and requesting a hearing on the billboard construction. Bogan's letter was not on an official form, was not accompanied by a filing fee, and was not filed within thirty days of the PZC's decision. The Board took no action in respect to Bogan's letter. Petitioners did not notify either the Bacas or National of their objections to the construction of the billboards prior to filing suit on May 21, 1992.
The district court initially concluded that all Petitioners had standing because they were aggrieved persons, and that standing encompassed the two billboards on the parcel east of I-25. However, the court further concluded that Lovato, Rivera and Baldonado lacked standing because they had received sufficient notice, had failed to exhaust their administrative remedies, and were time-barred. The district court also found that Bogan had not received proper notice of the hearing before the PZC on a special use permit requested by Respondents and that his claim was not barred.
Petitioners then filed an "Application for Attorney Fees and Costs." Following argument on attorney's fees, the district court found that "[t]he County's failure to provide Bogan with adequate notice [was] a denial of due process under the United States Constitution." *401 The court further found that "Bogan is entitled to recovery of reasonable attorney's fees ... as a prevailing party under his procedural due process claim under 28 [sic] U.S.C. § 1983." The court entered specific findings regarding the fees and reduced the amount requested by three-quarters.
On appeal, Respondents contend that the district court erred in entertaining Bogan's claim. On cross-appeal, Petitioners contend that the court should have allowed the other three Petitioners, as well as Bogan, to remain parties to the suit and should have allowed all of Petitioners' requested attorney's fees.
We begin by addressing the issues raised on cross-appeal regarding the district court's decision to dismiss the claims of Petitioners Lovato, Rivera, and Baldonado. We explain why the court correctly determined that only Bogan had a claim the district court was able to address on the merits. Next, we will address the issues raised by Respondents concerning Bogan's claim. Finally, we discuss Bogan's claim for additional attorney's fees.

II

Cross-Appeal: The PZC Decision
Petitioners claim that no billboards should be allowed to stand because the district court found that the PZC's decision to permit the billboards was ultra vires, and therefore also void. They argue that since the decision is void, the thirty-day limitation period for filing a petition which is set out in NMSA 1978, Section 3-21-9(A) (Repl.1985) has never become effective. Thus, the district court erred in dismissing the claims of Petitioners Lovato, Rivera, and Baldonado as untimely. Alternatively, they argue that the district court erred in dismissing those claims because they received inadequate notice. Finally, they argue that the district court erred in dismissing their claims because the PZC decision should have been filed with the county clerk, see § 3-21-9, but it was not. We first address the claim that the PZC decision was ultra vires.

A. Ultra Vires Action by the PZC

A decision of a zoning body which is not within the authority granted and does not reasonably relate to the objectives of zoning is ultra vires and unenforceable. Mechem v. City of Santa Fe, 96 N.M. 668, 672, 634 P.2d 690, 694 (1981). In this case the ordinance gives the PZC authority to allow permissive or conditional uses as set forth and defined in the ordinance. Because the language of the ordinance is clear, the district court was able to determine on petition of an aggrieved party pursuant to Section 3-21-9(A) whether the billboards were a permissive use. Cf. High Ridge Hinkle Joint Venture v. City of Albuquerque, 118 N.M. 29, 888 P.2d 475 (App.1994) (remanding for reconsideration of a variance granted under an ambiguous ordinance provision). Nevertheless, the PZC decision differs from the city's action in Mechem, a case the district court concluded controlled. Although the PZC erred in granting the conditional use permit, we cannot say that its action was ultra vires.
Zoning statutes are in derogation of common law, and are therefore strictly construed. State ex rel. Vaughn v. Bernalillo County Bd. of County Comm'rs, 113 N.M. 347, 349, 825 P.2d 1257, 1259 (Ct.App.1991). The ordinance defines permissive uses as single unit dwellings, "business, service, and commercial establishments," and "accessory uses and structures." The Bacas contend that billboards are either "business establishments" or "accessory uses and structures." On the facts of this case, they are neither. The district court did not err when it determined that billboards are not a permissive use under the plain language of the ordinance. On appeal, the Board should have reversed the PZC decision. Its failure to do so was reversible error.
Nevertheless, we conclude that the PZC decision was voidable rather than void. Any other decision would negate the legislative decision to authorize an appeal to the Board and to allow the Board to provide for the procedure to be followed in taking such an appeal. See NMSA 1978, § 3-21-8 (Repl. 1985). We need not decide, in the absence of more specific statutory language, that the statute provides an exclusive remedy. Cf. *402 Wold v. Lawrence County Comm'n, 465 N.W.2d 622 (S.D.1991) (statute expressly provided that appeal was exclusive remedy). We hold only that the PZC decision was not subject to collateral attack as void. Mechem is distinguishable.
In Mechem, the petitioner brought an action against a zoning decision of the city several years after the decision was filed. 96 N.M. at 669, 634 P.2d at 691. The city had approved a special exception which allowed the petitioner to use his property as a tennis club. In addition, however, the city required that the exception terminate upon any change of ownership in the property. Id. The subsequent owner would then have to petition the city for another special exception. However, no other buyer would want to take a chance on investing the money to buy an operation that might be forced to close if the city did not grant another special exception. Also, the petitioner would have suffered a great financial loss if he had to sell the property as if it were not zoned for the tennis club. Id. at 673, 634 P.2d at 695. As a practical matter, the restricted special exception restrained alienation. Id. The New Mexico Supreme Court compared the special exception to a license and indicated the city's action "attempted to regulate ownership." Id. at 672, 634 P.2d at 694. The Court held that "it is not within the proper function of the zoning authority to condition an exception to the use of real property upon personal rights of ownership rather than use." Id.
Thus, in Mechem, the city attempted to regulate the ownership of property, an action it lacked authority to take. The petitioner's collateral attack on a void decision differs from the present case, in which the PZC acted within its ordinary powers in granting a conditional permit based on use, although it erred in construing the ordinance and recognizing the particular use as a valid conditional use. Here the PZC's decision involved a mistake of law rather than an ultra vires action. In Richardson v. Jackson County, 432 Mich. 377, 443 N.W.2d 105, 108 (1989), the Court distinguished ultra vires activity from operation in a manner not authorized by statute:
Improper performance of an activity authorized by law is, despite its impropriety, still "authorized" within the meaning of the... governmental function test. An agency's violation of a regulatory statute that requires the agency to perform an activity in a certain way cannot render the activity ultra vires, as such a conclusion would swallow the ... rule by merging the concepts of negligence and ultra vires.
Id. 443 N.W.2d at 108.
On these facts, the district court did not err in concluding that Petitioners Lovato, Rivera, and Baldonado were required to perfect a timely appeal if they had received proper notice. We next address the claim that the County failed to give them proper notice. We conclude that the notice given them satisfied the ordinance and they failed to perfect a timely appeal.

B. Notice to Petitioners Lovato, Rivera, and Baldonado Was Adequate

The description in the notice sent to Petitioners Lovato, Rivera, and Baldonado specified that the "area in question is PT of Sections 11 and 12 13N 4E lying E & W of I-25, and between the Algodones TI and MP 247." None of the Petitioners claim that they did not understand the intended location of the billboards. The standard for adequate notice requires that the average citizen reading the notice be fairly informed of the general purpose of what was being considered. Nesbit v. City of Albuquerque, 91 N.M. 455, 458, 575 P.2d 1340, 1343 (1977). In Nesbit, the inadequate property description was vague. This description was not.
Additionally, where circumstances are such that a reasonably prudent person should make inquiries, that person is charged with knowledge of the facts reasonable inquiry would have revealed. Germany v. Murdock, 99 N.M. 679, 681, 662 P.2d 1346, 1348 (1983). Here none of the Petitioners did so inquire, even though the notice instructed them to contact the clerk's office if they had any questions.
Having received adequate notice of the hearing, Petitioners Lovato, Rivera, and Baldonado had an adequate remedy under *403 the statute through an appeal to the Board. See § 3-21-8(B). By ordinance, they should have filed within thirty days of the decision. They did not.
They contend that they were entitled to appeal to the district court, notwithstanding the ordinance, because the PZC decision was not filed with the county clerk as required by Section 3-21-9(A). That provision sets forth the following procedure for appeals:
Any person aggrieved by a decision of the zoning authority, or any officer, department, board or bureau of the zoning authority may present to the district court a petition, duly verified, setting forth that the decision is illegal, in whole or in part, and specifying the grounds of the illegality. The petition shall be presented to the court within thirty days after the decision is entered in the records of the clerk of the zoning authority.
As we understand Section 3-21-9(A), the decision to which the legislature refers is that of the Board. See NMSA 1978, § 3-21-1(A) (Repl.1985). "For the purpose of promoting health, safety, morals or the general welfare, a county or municipality is a zoning authority...." Id. See also NMSA 1978, § 3-21-7 (Repl.1985) ("The zoning authority, within its jurisdiction, may: A. act as a zoning commission; B. designate the planning commission to act as a zoning commission; or C. appoint a zoning commission..."). Given the organizational scheme, we construe Section 3-21-8, which is entitled "Appeals to zoning authority," as governing Petitioners' right to have the PZC decision reviewed by the Board. Section 3-21-9(A), then, governs their ultimate right to have the Board's decision reviewed by the district court.
The district court may have concluded that these Petitioners were time-barred because they failed to timely appeal the PZC decision to the district court within thirty days of the date that decision was filed, rather than because they failed to appeal to the Board within thirty days of that date. We will affirm a correct decision notwithstanding the fact that we disagree with the reason underlying it. See State ex rel. State Highway Dep't v. Strosnider, 106 N.M. 608, 612, 747 P.2d 254, 258 (Ct.App.1987). Here, we affirm the district court on the basis that, having had adequate notice of the PZC decision, these Petitioners failed to pursue the statutory remedy provided in Section 3-21-8 by appealing within thirty days as provided by ordinance. See § 3-21-8(A). In view of our disposition, we need not address their further argument that the time limitation imposed by Section 3-21-9(A) never began to run. We conclude that Section 3-21-8 controls and Petitioners waived their right to proceed under Section 3-21-9.

III

Bacas' Appeal: District Court Jurisdiction
The Bacas claim that the district court lacked jurisdiction because Bogan failed to exhaust his administrative remedies as required by the ordinance and because he did not comply with Section 3-21-9(A). They also argue that he lacked standing to challenge the billboards, he was barred by laches, and the ordinance is void. Finally, they argue that the district court should have remanded the matter to the Board for consideration rather than ordering them to remove the billboards on the west side of the freeway. We need not address the last argument because we have discussed the district court's authority to construe the ordinance in disposing of Petitioners' claim that the PZC decision was void. We begin with the Bacas' claims that the ordinance on which Bogan relied was invalid.

A. The Ordinance

First, the Bacas argue that the ordinance is void due to failure to enact it in compliance with NMSA 1978, Section 3-21-5 (Repl.1985). That statute requires that any "regulations and restrictions of the county... zoning authority are to be in accordance with a comprehensive plan...." Section 3-21-5(A). The Bacas contend that this language means Sandoval County had to have an established formal plan before the County could enact any zoning regulations, and since they had not done so when the ordinance was adopted, it was invalid. We reject this argument.
*404 Section 3-21-5 neither defines "comprehensive plan" nor does it require that such a plan be formally adopted prior to the passage of the ordinance. The New Mexico courts have stated that a comprehensive plan may be found within the ordinance itself where a comprehensive plan has not been enacted and that the plan need not even be in the form of a document. Watson v. Town Council of Bernalillo, 111 N.M. 374, 379, 805 P.2d 641, 646 (Ct.App.1991); Board of County Comm'rs v. City of Las Vegas, 95 N.M. 387, 390, 622 P.2d 695, 698 (1980); Burroughs v. Board of County Comm'rs, 88 N.M. 303, 307, 540 P.2d 233, 237 (1975). Although a comprehensive plan had not been formally adopted when the ordinance was passed, it is undisputed that Sandoval County had a comprehensive plan.
The district court concluded that the ordinance was valid because the County had a comprehensive plan in substance if not form at the time the ordinance was enacted. We agree. The ordinance was adopted by the Board on January 20, 1988. The Algodones Area Development Policy was adopted on March 18, 1987, and the Sandoval County Comprehensive Plan was adopted on May 3, 1990.
Next, the Bacas argue that zoning the Algodones area, rather than all of Sandoval County, constitutes spot zoning, and thus should not be permitted. This Court provided a detailed analysis of spot zoning in Watson. 111 N.M. at 378-81, 805 P.2d at 645-48. Basically, spot zoning might exist "if the use fails to comply with the comprehensive plan" or "is inconsistent with the surrounding area, grants a discriminatory benefit to the land owner, and/or harms neighboring properties or the community welfare." Id. at 378, 805 P.2d at 645. The facts of this case do not support a claim of spot zoning. For the foregoing reasons, both of the Bacas' arguments regarding zoning irregularities fail.
We next address the Bacas' claims that the district court erred in determining Bogan had standing to complain about the billboards. In effect, they argue that the district court should have dismissed his claim, although on different grounds, when the court dismissed the claims of his co-petitioners.

B. Bogan's Standing in District Court

The district court determined that Bogan was an aggrieved party because as an abutting landowner, he was entitled to notice. Not having received notice, he was aggrieved by the PZC decision and entitled to appeal to the Board. See § 3-21-8(B). Further, the court implicitly determined that, because the Board failed to act on his letter of appeal, he was aggrieved within the meaning of Section 3-21-9(A) and entitled to appeal to the district court. The Bacas contend that there are two reasons why the failure to notify Bogan of the PZC hearing was harmless: (1) Bogan was not an abutting landowner, and thus not entitled to notice under the ordinance; and (2) billboards are a permissive use under the ordinance, so no hearing was required. We have addressed the second argument in disposing of Petitioners' claim that the PZC decision was void. We now address the first argument.
We need not determine whether Bogan was entitled to notice of the PZC decision in order to determine whether on these facts Bogan was an aggrieved party within the meaning of the relevant statutory provisions. But see Lawrence Transfer & Storage Corp. v. Board of Zoning Appeals, 229 Va. 568, 331 S.E.2d 460 (1985) (landowner's internal division of property does not deprive abutting landowners of right to notice of zoning change on interior parcel). Section 3-21-8(B) permits anyone aggrieved by a zoning officer or commission decision to appeal to the zoning authority. Section 3-21-9(A) allows "[a]ny person aggrieved" by a zoning authority decision to petition the district court. "Where the class of persons entitled to review is fixed by statute, it cannot be narrowed by ordinance." 4 Robert M. Anderson, American Law of Zoning 3d § 27.10, at 487 (1986).
The County used the tax assessor's records to determine who were abutting property owners, and thus were entitled to notice. Those records indicate that Bogan is an abutting landowner to the west parcel. *405 Whether or not Bogan was legally entitled to notice as an abutting landowner, he was entitled at least to a hearing on appeal from the PZC's decision on the factual issue of whether he was an abutting landowner. At the time Bogan filed his letter requesting a hearing before the Board, the record indicates he had a claim that he had been denied notice as an abutting landowner. Thus, he was aggrieved by the Board's failure to hear his appeal.
We conclude that Bogan was an aggrieved party within the meaning of both Sections 3-21-8(B) and -9(A). The district court did not err in refusing to dismiss his claim. We may affirm the district court's decision, notwithstanding the fact that our rationale differs from that underlying that court's decision. See Strosnider, 106 N.M. at 612, 747 P.2d at 258.
We next examine the Bacas' other challenges to Bogan's right to proceed under Section 3-21-9(A).

C. Procedural Challenges to Bogan's District Court Appeal

The ordinance requires persons aggrieved by the PZC's decision to appeal to the Board, within thirty days of the filing of the decision, by filling out forms provided by the zoning officer and tendering a specified fee. It was stipulated that Bogan had not taken those steps. The purpose of the exhaustion requirement is to avoid circumvention of the administrative process and to give local authorities a chance to correct any errors. 4 Anderson, supra, § 27.28, at 552-53. However, the courts have some discretion in the application of the exhaustion doctrine and can find the doctrine satisfied by an effort made in good faith, even if that effort fails. Id. at 556. Bogan's letter of May 6, 1992 informed the Board that he had not received written notice of the June 12, 1991 hearing, and he requested a hearing on the billboard construction. The district court found that the letter was intended as an appeal of the PZC's decision. The district court also found that Slezak, the planning and zoning administrator, understood the letter to be an attempted appeal. Neither Slezak nor the Board ever notified Bogan that his attempt at filing an appeal was inadequate; they took no action on his appeal. The district court concluded, and we agree, that Bogan substantially complied with the ordinance by filing his letter of appeal within thirty days of his first notice of the decision to allow the erection of the billboards, that he made a timely appeal under the ordinance, and that his letter constituted an appeal, thus exhausting administrative remedies.
Section 3-21-9(A) requires that persons aggrieved by a decision of the zoning authority, or by any board of the zoning authority, present their verified petition within thirty days after the decision. Since the Board took no action on Bogan's appeal for a new hearing, the time to start the statutory appeal regarding that request never began to run. Therefore, we agree with Bogan that the district court did have jurisdiction in this case.
The Bacas' next claim is that the findings of fact in this case support the application of laches. Bogan counters that laches is disfavored and to be applied only if he was inexcusably neglectful in enforcing his rights. Mechem, 96 N.M. at 671, 634 P.2d at 693. Bogan was not notified of the hearing; thus, he did not learn of the PZC's decision until the billboards were being erected in April 1992. Immediately upon learning of the billboards, Bogan wrote to the Board and requested a new hearing. Furthermore, Petitioners' legal action was filed in May 1992, just one month after Bogan learned about the billboards. Laches requires that there be an inexcusable delay, and such a delay is not present in this case. See McClure v. Davidson, 258 Ga. 706, 373 S.E.2d 617, 620-21 (1988) (where adjoining landowners delayed appeal for three months in light of valid dispute over proper avenue for appeal, laches inapplicable). The district court correctly concluded that the doctrine of laches did not apply.

IV

The Cross-Appeal: Attorney's Fees
The final issue we consider is Bogan's claim that the district court erred in reducing *406 the requested attorney's fees and costs. First, we address federal law support for the award Bogan requested.
The Civil Rights Attorney's Fees Awards Act of 1976 permits a trial court to award attorney's fees to a party who prevails in a civil rights action brought under any of several enumerated federal statutes. 42 U.S.C. § 1983 gives rise to a federal cause of action when a "person ... under color [of law], subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ..." A county government acting "under color of some official policy" can be subject to liability under Section 1983. See Monell v. Department of Social Servs., 436 U.S. 658, 692, 98 S.Ct. 2018, 2036-37, 56 L.Ed.2d 611 (1978). Success on a Section 1983 claim can be the basis for an attorney's fee award pursuant to 42 U.S.C. § 1988. To be a "prevailing party" within the meaning of Section 1988, the plaintiff need not prevail on all of the major issues in the litigation. Rather, the plaintiff need only "succeed[ ] on any significant claim" and obtain "some of the relief sought." Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989). Nonetheless, the plaintiff must prevail on some federal civil rights claim in order to be eligible for a fee award. A plaintiff who prevails on one or more state claims but loses on all federal claims will not be eligible for an attorney's fee award under 42 U.S.C. § 1988. See Kelly v. City of Leesville, 897 F.2d 172, 176-77 (5th Cir.1990); Gagne v. Town of Enfield, 734 F.2d 902, 904 (2d Cir.1984).
In the instant case, Bogan premised his Fourteenth Amendment due process clause claim solely on the County's failure to send him a notice letter regarding the June 12, 1991 PZC variance hearing. Because this is Bogan's only federal claim, it is the sole basis for the Section 1983 civil rights claim and the resulting Section 1988 attorney's fee award. If the County's inaction did not violate the United States Constitution, then the attorney's fee award lacks statutory support. See generally Garcia v. Las Vegas Medical Center, 112 N.M. 441, 443-45, 816 P.2d 510, 512-14 (Ct.App.) (discussing relevance of New Mexico statutes to a federal claim under Section 1983), cert. denied, 112 N.M. 308, 815 P.2d 161 (1991).
The parties to this litigation agree that Bogan was not actually an "abutting landowner" during May and June of 1991. However, the property records on file with the Sandoval County Assessor at that time erroneously identified Bogan as an abutting landowner because a 1989 conveyance of six acres of land lying between Bogan's land and Baca's land had never been recorded. Notwithstanding the fact that he was the abutting landowner of record, Bogan did not receive notice of the June 12, 1991 PZC hearing. The appellate issue is whether the county violated Bogan's Fourteenth Amendment due process rights when it failed to notify all persons listed on the public land records as abutting landowners.
In support of his assertion that his status as an abutting landowner of record constitutionally entitled him to notice, Bogan cites Cano v. Lovato, 105 N.M. 522, 734 P.2d 762 (Ct.App.), cert. denied sub nom. New Mexico Title Co. v. Cano, 104 N.M. 246, 719 P.2d 1267 (1986), and cert. quashed, 105 N.M. 438, 733 P.2d 1321 (1987). In Cano, this Court applied a line of United States Supreme Court cases which held that the due process clause of the Fourteenth Amendment requires that states provide reasonable notice to interested parties when the state takes an action likely to affect the life, liberty, or property of the parties. See Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 795, 103 S.Ct. 2706, 2709, 77 L.Ed.2d 180 (1983); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Cano held that when a state agency provides notice to those persons identifiable from public property records, the agency complies with Mennonite's requirement to provide notice to reasonably-ascertainable interested persons. 105 N.M. at 532-33, 734 P.2d at 772-73. Cano, however, did not define the class of interested persons. The principle that the County may rely on the public record does not resolve the issue whether, when it did not, Petitioner Bogan *407 was denied Fourteenth Amendment due process.
"The due process of law clause in the Fourteenth Amendment does not take up the statutes of the several States and make them the test of what it requires...." Hebert v. State of Louisiana, 272 U.S. 312, 316, 47 S.Ct. 103, 104, 71 L.Ed. 270 (1926); see also Kasper v. Board of Election Comm'rs, 814 F.2d 332, 342 (7th Cir.1987). Rather, "[i]n administrative proceedings due process is flexible in nature and may adhere to such requisite procedural protections as the particular situation demands." State ex rel. Battershell v. City of Albuquerque, 108 N.M. 658, 662, 777 P.2d 386, 390 (Ct.App.1989). The Supreme Court identified three significant criteria in evaluating due process requirements in the context of the potential impact of governmental action on private interests in Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S.Ct. 893, 902-03, 47 L.Ed.2d 18 (1976):
[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
Id. at 335, 96 S.Ct. at 903.
When a local government seeks to alter the zoning restrictions applicable to a parcel of property, the type of notice constitutionally required depends on how that zoning change might affect adjoining landowners and how onerous it would be to require individual notice to all who might be affected. Compare American Oil Corp. v. City of Chicago, 29 Ill.App.3d 988, 331 N.E.2d 67 (1975) (notice by publication insufficient on specific facts) with Rutland Environmental Protection Ass'n v. Kane County, 31 Ill.App.3d 82, 334 N.E.2d 215 (1975) (notice by publication sufficient on specific facts), cert. denied, 425 U.S. 913, 96 S.Ct. 1510, 47 L.Ed.2d 764 (1976). The nature of Bogan's interest in the property and the type of notice constitutionally required to protect that interest thus turns on a factual record not available to this Court.
If the ordinance is to provide a significant safeguard, it must provide adequate notice to accomplish that task. We cannot determine on the record before us whether the public notice of this hearing was adequate to accomplish this task.
Although the hearing of which Bogan received no notice was a public hearing, there is nothing in the record to indicate what notice the public had. On this record, we are reluctant to determine whether the ordinance created a constitutionally-protected interest, as well as whether the notice provided by the County was adequate to protect that interest. The County has resisted Bogan's claim to additional attorney's fees, but it has done so primarily on the ground he is not actually an abutting landowner. We are not persuaded that fact is dispositive of his federal civil rights claim.
If the notice given satisfied federal constitutional standards, however, the district court's award of twenty-five percent of the attorney's fees the court determined were reasonable is affirmed. Peterson v. Peterson, 98 N.M. 744, 748, 652 P.2d 1195, 1199 (1982). The County failed to cross-appeal the award of attorney's fees although it was entitled to resist Bogan's claim of error on appeal. See SCRA 1986, 12-201(C) (Repl.1992) (review without cross-appeal). In the absence of a cross-appeal, however, we will not reverse the award the district court made. We conditionally affirm the award made, but remand to permit the parties to present evidence and argument regarding the adequacy of the notice given the public. If the district court determines the notice given did not satisfy federal constitutional standards, the court should enter findings and conclusions regarding the evidence presented, as well as its rationale in awarding fees. If the district court determines Bogan had a valid claim under Section 1983, specific findings regarding the fee award will facilitate appellate review.

*408 V

Conclusion
The decision of the district court is affirmed on all issues raised on appeal and cross-appeal, other than the attorney's fee award. On that issue, the decision is conditionally affirmed, and the case is remanded for further proceedings.
IT IS SO ORDERED.
ALARID and BLACK, JJ., concur.